may it please the court mr. Swisher had the say no evil argument or portion I have to hear no evil I have hearing aids and sometimes that don't hear the court clearly I jump out at you and that don't be startled okay with respect to Jose Luis Pita-Mota the record in this case establishes that multiple witnesses testified multiple times about the same thing it may not be precisely vouching in the sense of being extra record and things of that sort and judge Graber you make a fine distinction with respect to the testimony my recollection is the same as being somewhat different from my testimony would be the same I'm not sure jurors make that same fine distinction when they hear somebody say it would be the same in other words that what they're saying would be the same thing we both saw it it would be the same and what I want to point you to on that is that for example with respect to one of the things that they talked about they would expect to see a scale in the house three agents testified about that that was Bennett Ostergaard and Valadez with respect to cutting agents and how they might be engaged in the house Bennett Barta Ostergaard and Valadez testified to that when you get to the issue of heat runs and what's a heat run Boris Barta and Valadez testified to that and let me are there any cases that suggest that there is a lack of entitlement on the part of the government to have several witnesses talk about the same thing I can't cite one off the top of my head to you what I can tell you under 403 B it's going to be cumulative but the point is particularly here which is a discretionary call it is but but the point here is that this is coming out not so much in the terms of I saw the light the light was red I think when you talk about factual witnesses that is different than when you talk about opinion testimony and bear in mind these witnesses were experts there was no question about that the government argued they were experts it told the jury repeatedly they were experts and they made their career or this was their career for them so that that was an important aspect in it and I believe that that is sufficient enough to make a there none of the cases that anybody has found so far involved more than two you can go through and basically name each witness who testified as an expert and here you start with Moritz and you go through Valadez and Valadez and in between you got the guy from Arkansas who talks about the highway and how he always stops and he always sees drugs and guns together and Moritz has said that and somebody else says that and pretty soon you know everybody knows it and something that is error tell me why it's you think it's not harmless error mr. Rawls did a good job of demonstrating through the testimony of Valadez who is I believe the only person aside from Barta who was able to see the where Peter Jose Luis Peter motor was he established through Valadez his testimony that there was nothing suspicious about the way Jose drove to or from the house when he got out of the car he didn't stop and look around to see if he was being followed he didn't see him do anything that was suspicious in any way to do that he also established that there were other people who had access to that house Hernandez lived there Hernandez was the one who actually produced the drugs and while he had a small shed in the back where he stayed there was no bathroom in that and so he would naturally come into the house the bathroom where this cutting agent was found and things of that sort this could have gone on without Jose Luis Peter motors involvement in large alright and that's why I think there is prejudice and were this case retried in a different way I think you're going to get a different result and you know we talked about the sweeping conclusions that some of these witnesses drew they said that you know we always see guns that are being disassembled to be shipped to Mexico these guns were rusty they were old they were parts they wouldn't make a single gun they couldn't shoot the ammunition to 7.62 ammunition that they wanted to say they found that could have been used in them then they talk talk about who was it then I think talked about the fact that that this was a stash house he would call it a stash house Valadez said no I wouldn't call it a stash house in another situation one of the witnesses testified that the guns in the house and the prosecutor made that same point here the guns in the house were there for protection well the jury acquitted on those counts there were two guns in the house they were in boxes unloaded and in a shelf with a bunch of other boxes on top of them in the bathroom they were one witness says they're there for protection the next wit and then one cross-examined it's well if they're unloaded they wouldn't be for protection because I wouldn't carry an unloaded gun with me so we have this whole panoply of experts coming in and part of the problem is if if if you're successful attacking the first witness they got Bennett they got Valadez and they got Ostergaard and Ostergaard although he testified before Valadez he's their cleanup hitter they qualified him and had him testify as an expert when I say qualified how was all of this problem ever raised to the district court the issue was not well raised in the district court there was a notice that was given by the prosecution that said they intended to call three witnesses and they gave the briefest summary that they were going to testify modus operandi at the start of the trial I'm not sure what defense counsel expected of that notice but it didn't sound or would not sound to me as a defense counsel must have also been aware at that point that these were percipient witnesses as well as modus operandi witnesses right I mean they were at the events in question at the arrest and yeah right so so they were known they were known to be percipient witnesses and then the government said and by the way they're also going to so to follow up with Judge Schroeder's question there was not an objection that it was improper for a witness to do both without employing mitigating procedures that's correct so so we were reviewing for plain error you are okay and and what I would say on that is that in one instance they did get into the respect to the comparison of the calls and I think that was a false voice identification and I think that was a faulty issue or faulty comparison but let me come back for just a second to this issue of the experts and the notice that they were going to be precipient witnesses the government's notice said something to the effect that the end we're going to give you notice of this that they're going to testify about these things and to the extent that that is expert testimony this is notice that we're going to use them as experts so in its notice that the government was was couching this as though it was sort of lay testimony well I think that what it sounds to me much more like well we're not sure if this counts as expert testimony but assuming that a judge thinks so here we are telling you about it what I mean I'm not a I don't understand why there's anything defective about the notice well the notice obviously is not as strong as it should be for the defense and I would give you that but the point of it is that at the it if you contrast the conduct of the prosecution in closing argument and with the position it took in that notice up front by the time it got to closing argument everybody was experts and while he did not say three witnesses testified to this or four witnesses testified to this he said repeatedly the prosecution said repeatedly the agents testified the experts testified you heard it from the agents and the experts and so everybody was lumped together it was plural and and that's part of the problem that we ran into in this particular case it's really hard to marshal a defense and if you look at it from the standpoint of okay let's say what they did was okay the notice was sufficient to get you there then what's the standard going forward is it eight witnesses is it eight experts or four and what are we telling the district judges they need to do about this situation it's tough though and there's no objection I basically a sui sponte obligation to to sort this stuff out and if the first time the agent testifies in an expert manner the defense counsel doesn't jump up and object it's it's pretty tough for that is to fault the district court for allowing the testimony to proceed it starts with Moritz and I'd have to take or if you're even offering an instruction right the government gave notice that Moritz was going to testify and Moritz is a first witness out of the and in terms of the defense posture you've been given notice to some extent that Moritz is going to say some of these things now it comes along and you get one of them and what do you do do you object and say he's not an expert and let the government go back through yes and I mean that's the short answer if you're going to preserve it for appeal I mean that's a that's the problem is it then you get into plain error and then that's a well we've our questions I've taken you over your time and so thank you for your argument thank you and we won't lose track of the other issues that you've briefed as well um if I could begin by talking about the defense's statements about the closing argument that was given and the government did four times in closing argument say the word expert in respect to testimony but it wasn't about all of the stuff that was was garnered there were four areas that the government specifically referred to they said they've talked about expert testimony with respect to roles in the offense the various roles that middlemen played that's at 629 10 at 1326 the agents and experts tell you that they this is what they would expect driving around doing heat runs so they referred to expert they also government also talked about expert testimony told you drug dealers aren't going to bring extra people to a drug deal and that's at 1346 and that some activities were consistent with being a middleman again talking about role in the offense so really the only thing that government talked about with respect to expert testimony it's closing argument was roles counter surveillance driving techniques and whether someone would bring extra people uninvited people to a drug deal I think the defense has a pretty legitimate argument about this blending of lay precipiate witness testimony and expert testimony I think there's a great deal of problem of potential for prejudice in that kind of testimony and here it goes all the way through the trial I mean you're saying in your experience does this happen yes and this is a this is a heat run your honor as the court as this court is set forth previously there is a potential for prejudice but I doubt I dispute that defense is pointed to any prejudice and that the examples some of the examples given were not truly expert testimony we're not called expert testimony by the government but they do there an active market for firearms parts of drug traffickers involved in yes where Mexico yeah and so then you find you use parts there's an active market therefore they make the connection and it's not subject to the same scrutiny that we would have for somebody who's just offering a purely expert opinion unconnected with the facts of the case right and and I love that you put to pick that example because that's an example where there was no prejudice because defense as they're supposed to in cross-examination sure took that apart the the things they pointed to one witness testified about a stash house based on his training experience they effectively took that of another government witness the counterfeit currency was another thing they talked about there well you can't really rely on the strength of the cross-examination to say there's no prejudice I mean I think you can your honor and I think that's what this court's cases have said read in specific just let me check my notes to make sure I'm well I take your point but I mean solely I mean if you have to rely on the cross-examination to say there's no prejudice right but I would say there are ways to carry it one would be an objection if the if the defense that thought that the evidence was harmful they didn't object there were four defense attorneys here none of them objected to any of this evidence and I contend that that's because it wasn't that egregious as the briefs make it seem if you read the transcript at a whole these are isolated incidents a lot of them were things like a scale is consistent with someone measuring drugs it doesn't require a Daubert hearing to establish that this court has said that guns and scales and things like that are consistent with drug trafficking so some of the examples they cite to are legitimate examples of where we used expert testimony and others I just will respectfully disagree the court did not conduct a did not give its imprimatur to these witnesses either specifically the instruction did not refer to them as testimony so the only person who was calling him experts was unfortunately me things happen in closing yes and as I stated earlier the the four times when I referred to it as expert testimony were in very limited specific categories the other times there were three other times where the word expert appeared in the transcript and it was twice where I said you don't need experts to tell you this common sense tells you this how long was this trial five days your honor I believe would you mind that I think I understand your argument on the experts and you had a chance to talk about that before would you mind talking about the Bruton argument yes sure your honor no counsel didn't have a chance to get to that but I think there's a point that he has on the Bruton well but Bruton Crawford issue your honor I would respectfully disagree that there was a Bruton issue here a they did not raise it if they specifically disclaimed any any Bruton issue right before trial started based on the sanitized statement and under Richardson this is exactly what this what the Supreme Court has said is okay under Richardson as long as you don't leave a blank you don't put mr. X and the statement was carefully sanitized I don't have it at hand I should have made sure I had it right in front of me and I apologize for that but did not refer to others did not refer to anyone else's involvement in the drug deal even with a blank and so therefore I don't think there's any Bruton issue or Crawford issue in that regard because there was nothing to him and the court did instruct the jury to consider the evidence separately and not to use evidence for one defendant as to the other one issue I would like to touch on if I can sir if the court found that there was some error in the mixing of the expert testimony the government strongly contends it's not plain but more importantly it's harmless the evidence was overwhelming as to mr. Jose Piedamoda the circumstances of the initial negotiation where Hernandez showed up at the deal they talked on the phone agent Moritz heard his voice had conversations he said I would send somebody I'm sorry before Hernandez sit there he talked with the CS in Mertz's presence talked with Jose Piedamoda Jose Piedamoda said I'll send Jesse Jesse showed up Hernandez showed up agent Ritz made an identification of his voice agent Ostergaard listened to jail recordings there was proper foundation laid for those to establish that they were Jose's voice on the jail recordings and then identified that as being the same voice on the tapes there were two witnesses in that regard plus his behavior was extremely suspicious he his cars were used two of his vehicles were used in the transmission I'm sorry one of his vehicles was used or at least registered in his wife's name to transport the drugs he met with the white car after the other four minute or the other two cars had met with the white Honda previously he they all went into his house together I think there was more than sufficient evidence to establish this defendants involvement in the drug trade separate apart from any of the expert testimony and I would like to also touch on Judge Graber's comments the notice was sufficient to put them on notice it didn't just list three it listed three witnesses by name but it said including all ice and our DEA and ICE agents including without limitation these three men the defense had Apple opportunity to make us specify who we were gonna call they had Apple opportunity to object during trial they objected quite frequently on other grounds during trial this was the type of issue that should have been handled and to the extent there was any shortcoming in the notice this courts case law says that that's not reversible error that a rule 16 discovery issue is not something that notice delivered refresh me um don't hold me to this but I believe it was more than 30 days prior to trial your honor I'm almost certain I could check if you'd like no that's fine um unless there are any further questions I will all right thank you very much so the case of United States versus Jose Luis Peter mode has submitted
judges: Schroeder, Thomas, Graber